INTEGON GENERAL INS. CORP. v. UNIVERSAL UNDERWRITERS INS. CO.

[100 N.C. App. 64 (1990)]

*Id.*, at 398, 348 S.E.2d at 800. A defendant is more blameworthy when the victim's age causes her to be more vulnerable, as when age impedes the victim from fleeing or fending off attack. *State v. Hines*, 314 N.C. 522, 525, 335 S.E.2d 6, 8 (1985). When a victim's age makes her more vulnerable than most women to defendant's forced commission of an offense, aggravation of defendant's sentence is appropriate and relates to the purposes of sentencing. *State v. Williams*, 74 N.C. App. 574, 576, 328 S.E.2d 775, 776 (1985) (defendant raped and committed forcible and felonious burglary on the victim).

Record evidence shows that Mrs. Greer's advanced age caused her to be more vulnerable to defendant's restraint and removal of her from her home than most women of a younger age. As evidenced by her failed escape attempt, the victim may have been able to escape defendant's control if she had not been so elderly.

No error.

Judges ORR and LEWIS concur.

---

INTEGON GENERAL INSURANCE CORPORATION AND DONNIE RAY BRAXTON v. UNIVERSAL UNDERWRITERS INSURANCE COMPANY, LEITH OLDSMOBILE-NISSAN, INC., AND FILIPPO MANIACI

No. 8921SC1307

(Filed 7 August 1990)

1. **Insurance § 88 (NCI3d)— garage liability policy—employee driving employer's car—employee's personal insurer as excess carrier**

    The trial court properly determined that defendant, which provided a garage liability policy for an employer, was the primary carrier for an employee who drove employer's car with its permission to test-drive it for a weekend and had a collision while doing so, and that plaintiff, which provided an automobile liability policy to the employee, was the excess carrier for the employee.

    **Am Jur 2d, Automobile Insurance §§ 217, 219, 222, 223, 389, 433.**

2. **Insurance § 100 (NCI3d) — employee driving employer's car — employee as "insured" — duty of insurer to defend**

Defendant garage liability insurer had a duty to provide a defense for an employee involved in a collision while driving his employer's car with the employer's permission, and to pay attorney fees and litigation expenses incurred in that defense, since the employee was an "insured" within the meaning of the policy issued by defendant, and the policy specifically provided that defendant had the duty to defend an insured.

**Am Jur 2d, Automobile Insurance §§ 217, 219, 222, 223, 389, 433.**

APPEAL by defendant Universal Underwriters Insurance Company from judgment entered 19 October 1989 by *Judge James A. Beaty, Jr.*, in FORSYTH County Superior Court. Heard in the Court of Appeals 1 June 1990.

*Greeson & Grace, P.A., by Michael R. Greeson, Jr., for plaintiff-appellee Integon General Insurance Corporation.*

*Petree Stockton & Robinson, by James H. Kelly, Jr., for defendant-appellant Universal Underwriters Insurance Company.*

GREENE, Judge.

Defendant appeals the trial court's entry of declaratory judgment. The parties stipulated the facts, and following a non-jury trial the court entered judgment for the plaintiffs, Integon General Insurance Corporation (Integon) and Donnie Ray Braxton (Braxton). Defendant is Universal Underwriters Insurance Company (Universal).

Integon and Braxton filed this action to determine the parties' rights and liabilities as governed by an automobile liability policy of insurance which Integon issued to Braxton and a garage liability policy which Universal issued to Leith Oldsmobile-Nissan, Inc. (Leith). The relevant facts, as stipulated by the parties and adopted in the Findings of Fact of the trial court, are summarized as follows: at all relevant times Integon provided automobile liability insurance coverage for Braxton, and Universal provided such coverage for Leith in a garage liability policy. On 27 March 1988, Filippo Maniaci was allegedly injured in an automobile collision with a Buick owned by Leith and driven by Braxton, Leith's employee. With Leith's

**INTEGON GENERAL INS. CORP. v. UNIVERSAL UNDERWRITERS INS. CO.**

[100 N.C. App. 64 (1990)]

permission, Braxton had taken the Buick for the weekend "for the purpose of trying the car out as a prospective buyer."

In Maniaci's suit against Braxton and Leith, Universal defended Leith, and Integon initially defended Braxton. Prior to trial of that suit, Integon and Braxton brought this declaratory judgment action against Universal to determine whether Universal's policy with Leith also required it to provide liability coverage and defense for Braxton in the Maniaci suit. After entry of ·the trial court's order determining Universal to be Braxton's primary carrier for the collision involving Leith's Buick, Universal settled the Maniaci suit on behalf of all parties.

Universal's policy with Leith states in pertinent part:

INSURING AGREEMENT — WE will pay all sums the INSURED legally must pay as damages (including punitive damages where insurable by law) because of INJURY to which this insurance applies caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD.

. . .

WE have the right and duty to defend any suit asking for these damages.

. . .

"AUTO HAZARD" means the ownership, maintenance, or use of any AUTO YOU own or which is in YOUR care, custody or control and:

    (1) used for the purpose of GARAGE OPERATIONS or

    (2) used principally in GARAGE OPERATIONS with occasional use for other business or non-business purposes or

    (3) furnished for the use of any person or organization.

. . .

WHO IS AN INSURED —

. . .

With respect to AUTO HAZARD:

    1. YOU;

2. Any of YOUR partners, *paid employees*, directors, stockholders, executive officers, a member of their household or a member of YOUR household, *while using an AUTO covered by this Coverage Part*, or when legally responsible for its use. *The actual use of the AUTO must be* by YOU or *within the scope of YOUR permission*;

3. Any other person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission. [Emphases added.]

. . .

OTHER INSURANCE — The insurance afforded by this Coverage Part is primary, except it is excess:

(1) for PRODUCT RELATED DAMAGES and LEGAL DAMAGES;

(2) for any person or organization who becomes an IN-SURED under this Coverage Part as required by law.

Integon's policy with Braxton states in pertinent part:

INSURING AGREEMENT

We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.

. . .

OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

Based on the stipulated facts and on the insurance policies' language, the trial court entered the following Conclusion of Law and Judgment which are pertinent to this appeal:

3. The policy provided by Universal Underwriters Insurance Company to Leith Oldsmobile-Nissan, Inc. provided automobile liability coverage to Donnie Ray Braxton on March 27, 1988.

AND FURTHER based upon the foregoing FINDINGS OF FACT and CONCLUSIONS OF LAW it is hereby ORDERED AND ADJUDGED that Universal Underwriters Insurance Company is the primary liability insurance carrier for the damages as a result of personal injuries sought by Filippo Maniaci as a result of the automobile accident on March 27, 1988.

It is FURTHER ORDERED AND ADJUDGED that Universal Underwriters Insurance Company provide a defense for Donnie Ray Braxton, including attorneys fees and litigation expenses, up to and in accordance with the policy limits provided by the policy issued by Universal Underwriters Insurance Company.

---

The issues presented are: (I) whether Universal provided primary liability insurance coverage for the damages sought by Maniaci against Braxton; and (II) whether Universal had a duty to defend Braxton.

I

[1]   Universal argues that the trial court first erred by concluding that Universal's policy with Leith covered Braxton while he permissibly drove Leith's automobile. Second, Universal argues that even if its policy provided such coverage, a comparison of Integon's and Universal's policies shows Universal was not the primary insurer of Braxton. We disagree.

Insurance contracts are construed according to the intent of the parties, and in the absence of ambiguity, we construe them by the plain, ordinary and accepted meaning of the language used. *Williams v. National Mut. Ins. Co.*, 269 N.C. 235, 238, 152 S.E.2d 102, 105-106 (1967).

Integon's policy insured Braxton himself for the collision at issue, but if Braxton did not own the vehicle, Integon would provide insurance only in "excess over any other collectible insurance."

Universal was required to provide coverage for automobiles owned by Leith and operated by "paid employees . . . within the scope of . . . [Leith's] permission." The stipulated facts show that Leith furnished Braxton, Leith's paid employee, the Buick to test-

INTEGON GENERAL INS. CORP. v. UNIVERSAL UNDERWRITERS INS. CO.

[100 N.C. App. 64 (1990)]

drive it for a weekend, and that Braxton's actual use of the Buick was within the scope of Leith's permission. The Universal policy insured Braxton because he falls within the second definition of 'insured' in the Auto Hazard portion of the policy. In this definition of 'insured,' there is no requirement that the employee use the automobile within the scope of his employment; he need only use it permissibly. Moreover, according to the clear language of the "Other Insurance" clause, Universal provided Braxton with primary insurance. Accordingly, we affirm the trial court's judgment declaring Universal primary carrier of coverage for Braxton, and Integon excess carrier for Braxton in these circumstances.

## II

[2] Universal argues that the trial court erred in concluding and ordering that Universal had a duty to provide a defense for Braxton and to pay attorney fees and litigating expenses incurred in that defense. We disagree.

The trial court ordered Universal, as primary carrier, to "provide a defense for Donnie Ray Braxton, including attorney fees and litigation expenses, . . . in accordance with the policy limits. . . ." Universal argues "that because each carrier owed to its named insured a separate duty to defend (separate from the existence of any other coverage)[,] Integon should bear its own expenses with regard to the defense of its insured driver." Integon has an absolute obligation to provide a defense for Braxton that is separate from its undertaking to pay certain sums for which he might become liable. See *Fireman's F. Ins. Co. v. North Carolina Farm B.M.I. Co.*, 269 N.C. 358, 361, 152 S.E.2d 513, 516 (1967). Similar to the facts in the *Fireman's Fund* case, in Integon's policy the 'other insurance' clause (which defines Integon's status here as an excess carrier) relates "to the amount to be paid in discharging the liability, if any, of the insured to a third party claimant." *Id.*, 162 S.E.2d at 517. In addition, Integon's own policy gave rise to its duty to provide Braxton's defense, even though Universal was deemed the primary carrier for discharging Braxton's liability. *Id.*, at 361-62, 361 S.E.2d at 517. Specifically, the policy provided that Integon "settle or defend . . . any claim or suit asking for . . . damages. In addition to our limit of liability, we will pay all defense costs we incur." Integon's obligation to defend is not the issue. Rather, the present issue is whether Universal had an obligation to provide a defense for Braxton.

COUNTY OF RUTHERFORD EX REL. HEDRICK v. WHITENER

[100 N.C. App. 70 (1990)]

As primary carrier, Universal owed its insured both the duty to insure against liability and a duty to defend. The Universal policy states that it "will pay all sums the INSURED legally must pay as damages . . . because of INJURY to which this insurance applies. . . ." Furthermore, Universal has the "duty to defend any suit asking for these damages." Since we have already determined that Braxton is an 'insured,' Universal had the duty to defend him, and the trial court correctly ordered it to do so. Whether Integon is entitled to reimbursement from Universal for defense expenses incurred is an issue not before this court. *See Horace Mann Ins. Co. v. Continental Cas. Co.*, 54 N.C. App. 551, 557-58, 284 S.E.2d 211, 214-15 (1981) (under certain circumstances, if the amount for which the insured is sued is within primary coverage, the excess carrier may recover for monies expended in defense from primary carrier); *see generally*, Annotation, *Defense Costs— Primary and Excess Insurers*, 19 A.L.R.4th 107 (1983); Annotation, *Defense by Insurer—Co-Insurer's Duty*, 90 A.L.R.3d 1199 (1979).

Affirmed.

Judges ORR and LEWIS concur.